UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.T. REAL ESTATE INVESTMENTS,
L.L.C.,

               Plaintiff,

v.

CHARTER TOWNSHIP OF HURON,

               Defendant.
_____/

Civil Action No. 23-10780

Nancy G. Edmunds
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS (ECF No. 23)**

Plaintiff D.T. Real Estate Investments, L.L.C. ("DT") brings this action against defendant Charter Township of Huron (the "Township"), alleging violations of its substantive due process and equal protection rights under the United States Constitution, and a violation of the exclusionary zoning provision of the Michigan Zoning Enabling Act, M.C.L. § 125.3207.

The dispute grows out of DT's acquisition of a parcel of land within the Township's boundaries that it purchased for the specific purpose of developing into a warehousing materials distribution and logistics center (the "Property"). According to DT, the Township had signed an "Interlocal Agreement" in 2009, which "determined that attracting air-commerce linked businesses, supply chain businesses, and businesses needing to be physically located near the Detroit Metropolitan Wayne County Airport and Willow Run Airport . . . offers significant development opportunities and benefits." Based on that

agreement, in 2013, DT entered into a Purchase and Development Agreement for the Property with the Charter County of Wayne on December 12, 2013.

DT then began conducting due diligence efforts on the project, and it alleges that "in an effort to secure DT's investment in, and development of, the Property for a warehousing and material distribution center and trucking and transit terminal, the Township had zoned the Property PDA and subsequently site plan approved the Property for a warehousing, materials distribution and logistics (and associated uses) center and development . . ." (the "Inducements"). DT alleges that "[i]n specific reliance on [the Township's Inducements], DT "completed substantial construction related activity and other work of a substantial character," "including incurring hundreds of thousands of dollars of expenses site clearing and grading the Property. . ." DT alleges that the Township "agreed [that DT's efforts] constituted commencement of construction . . ." DT also alleges that it "spent other significant economic resources consistent with and in justifiable reliance" on the Township's Inducements, "engaged in other substantial acts taken in reliance on representations from and affirmative actions by the Township," and "closed on the purchase of the Property on July 12, 2015 for $851,170.00."

DT alleges that, notwithstanding the Township's prior Interlocal Agreement and dealings with DT with respect to the Property, on August 10, 2020, the Township voted "to eliminate warehousing and material distribution centers and trucking and transit terminals as a permitted and special land use under the Township zoning ordinance ('Logistics Use Zoning Decision')." DT alleges that the Logistics Use Zoning Decision is "preventing" it from developing the Property as it had previously been induced to do by

the Township, and as the Township had previously specifically approved. DT further alleges that even though the Township's position is that DT cannot, without additional approvals, develop the Property as previously agreed, in conjunction with its adoption of the Logistics Use Zoning Decision, the Township approved of Amazon and Home Depot building separate "industrial warehouse and distribution facilit[ies]" within the PDA.

Based on all of the foregoing, DT alleges that it "has been denied its constitutionally protected substantive due process property interests and vested rights, obtained through the DT Zoning Decision and DT's subsequent vesting actions, to develop its Property for a warehousing, materials distribution and logistics (and associated uses) center and development." DT brings claims for: "Declaratory Relief" (Count I); "Denial of Substantive Due Process" (Count II); "Denial of Equal Protection" (Count III); "Violation of 42 U.S.C. § 1988(b) and 42 U.S.C. § 1983" (Count IV); and "Exclusionary Zoning in Violation of MCL §125.3207" (Count V).

On August 30, 2023, the Township filed a motion for judgment on the pleadings (ECF No. 23), which was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 32). The motion was fully briefed (ECF Nos. 30, 34), and the Court held a hearing on the motion on November 3, 2023. For the detailed reasons stated on the record, which are incorporated herein by reference, the Township's motion should be **GRANTED IN PART** as to DT's claims for declaratory relief (Count I) and violation of Sections 1988 and 1983 (Count IV), and **DENIED IN PART** as to DT's claims for violation of its substantive due process rights (Count II), equal

3

protection rights (Count III), and Michigan's exclusionary zoning law (Count V). However, the Court highlights the following as to its recommendations:

- **Claims for declaratory relief (Count I) and violation of Sections 1988 and 1983 (Count IV).** DT's claims for "declaratory relief" and alleged "violations" of Sections 1988 and 1983 are clearly subject to dismissal because they cannot be brought as standalone causes of action. *See, e.g.*, *Turaani v. Sessions*, 316 F. Supp. 3d 998, 1015 (E.D. Mich. 2018) (holding that "injunctive and declaratory relief are remedies and not independent causes of action"); *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617-18 (1979) ("[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything."); *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1160 (6th Cir. 2021) ("§ 1983 contains no substantive rights. It merely provides a vehicle for vindicating rights found in the Constitution or another federal law."); *Henderson v. Reyda*, 192 F. App'x 392, 397 (6th Cir. 2006) (holding that Section 1988 allows a federal Court to award the prevailing party in a civil rights action reasonable attorney fees as part of costs, but does not create a separate federal cause of action for a civil rights violation).

- **Substantive Due Process Claim (Count II).** The Township's motion for judgment on the pleadings is flawed in multiple respects as to DT's substantive due process claim. First, the motion relies on evidence which the Court cannot consider at this stage of the case, including an aerial "map" of the Property, Planning Commission and Board minutes, and the resolution adopting the Logistics Use Zoning Decision. Moreover, the "map" is of no evidentiary value as the photo was taken before the salient work was performed on the Property, and the other evidence, while perhaps ultimately admissible and relevant, must be subjected to the discovery process before the Court could evaluate its substantive merit.

  Second, the Township's motion rests largely on an overly narrow interpretation of *Bevan v. Brandon Tp.*, 438 Mich. 385 (1991), which case is distinguishable, in any event. The Township essentially argues that under *Bevan*, DT was required to show that prior to the adoption of the Logistics Use Zoning Decision, DT had constructed enough of a distribution and logistics center such that that particular "nonconforming" use would have been "apparent." Specifically, the Township relies on the following passage from *Bevan*:

  > In order for a nonconforming use of land to vest, actual construction on the site must have begun before the zoning regulation is adopted.

> Application of a zoning ordinance does not amount to a taking where the nonconforming use of the property "rests solely within the owner's contemplation." []. In *Gackler [Land Co., Inc. v. Yankee Springs Tp.*, 427 Mich. 562, 574–575 (1986)]*,* we ruled that
>
> "[t]o establish a nonconforming use, 'there must be work of a 'substantial character' done by way of preparation for an actual use of the premises.' The actual use which is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner. In this regard, preliminary operations such as ordering of plans, surveying the land, and the removal of old buildings are insufficient to establish a nonconforming use. *The test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, 'whether there has been any tangible change in the land itself by excavation and construction.'*"
>
> *Bevan*, 438 Mich. at 401 (emphasis *Bevan*).

This passage from *Bevan* suggests that the most significant consideration is not any particular level of building "construction" – a term subject to multiple interpretations – but that the landowner has taken concrete steps to develop the property *for the nonconforming use*, as opposed to merely "contemplating" doing so in the future. DT has presented detailed allegations (albeit some at oral argument and/or in its response brief) that substantial work was done to the Property, including both by DT **and by the Township**, to ready the Property **for DT's specific planned distribution and logistics center**. For example, DT specifically asserts that the Township's work was performed "**in accordance with DT development-specific obligations** in the Agreement, all of which Township representatives specifically agreed constituted commencement of construction." (ECF No. 30, PageID.413) (emphasis added).[1]

It is also worth noting that the *Gackler* court's ruling was based on the fact that that case was "not a situation where construction of a project before completion is halted by the enactment of a zoning ordinance and to disallow completion of the project would work a clear injustice." *Gackler*, 427 Mich. at 575. Here, however, DT is making exactly such an argument. Finally, *Bevan* is distinguishable because there

---

[1] Because so much additional factual detail was provided at the hearing, DT's counsel offered to file a second amended complaint, which the Court finds would be appropriate. *See infra* at 8.

5

was no element of inducement by the municipality in that case, whereas here, the Inducements constitute a significant aspect of DT's overall due process claim. Indeed, as the Court explained at the hearing, numerous courts have held that a municipality's inducement of a landowner to act is a valid, if not central, consideration in determining whether the landowner has a vested property right. *See, e.g.*, *Brooks v. Butler Cnty., Ohio*, No. 21-4129, 2022 WL 2526601, at *6 (6th Cir. July 7, 2022) ("In the zoning context, we have regarded [a vested property right] to mean that a plaintiff must have taken substantial steps to "securely vest" an interest in the maintenance of a particular zoning classification.  In *Nasierowski [Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 897 (6th Cir. 1991)], our conclusion that a property owner had a protected property interest in a particular zoning classification ***hinged on the fact that the owner had acted in reliance on the prior zoning map, both through administrative work with city departments to get building permits and significant financial investments in the land***.  []  The changed zoning classification would likely have wiped out those investments."); *Nasierowski*, 949 F.2d at 897) ("First, and perhaps foremost [to the vested property right question], [plaintiff] expressly conditioned the purchase of the property on his obtaining a favorable zoning opinion from the City.  It is clear that [plaintiff] would not have purchased the land unless the City had first advised him that, as of right, he was authorized to develop the parcel along the proposed lines.  ***The acquisition of the land was, in and of itself, a substantial act undertaken exclusively upon the City's approval and affirmative encouragement of the proposal*.)** (emphasis added); *Tandy Corp. v. City of Livonia*, 81 F. Supp. 2d 800 (E.D. Mich. 1999).

Citing to *Golf Village North, LLC v. City of Powell, Ohio*, 42 F.4th 593, 601 (6th Cir. 2022), the Township also argues that DT failed to allege facts showing that the adoption of the Logistics Use Zoning Decision was "conscious shocking."  While it is not entirely clear that this standard applies where DT has alleged it possessed a vested property right in constructing the distribution and logistics center, even if it does apply, as the Court explained at the hearing, *Golf Village* was decided at the summary judgment stage, and DT is entitled to conduct discovery into the Township's challenged actions.

For all of these reasons, the Township's motion for judgment on the pleadings as to DT's substantive due process claim should be denied.  Discovery is required to explore DT's allegations about the Township's Inducements, the work DT and the Township performed to the Property towards DT's planned distribution and logistics center, and the Township's challenged actions.

- **Equal Protection Claim (Count III).** The Township's motion for judgment on the pleadings as to DT's equal protection claim is based on its contention DT has not alleged it is similarly situated to Amazon and Home Depot because those two entities sought and obtained approval to build "industrial warehouse and distribution facilit[ies]" that otherwise would have been disallowed under the Township's Logistics Use Zoning Decision, whereas DT has not done so. This argument lacks merit because the very heart of DT's claim is that it already had a vested property right in constructing such a facility, and thus, the mere fact that it did not separately apply for such permission after the Logistics Use Zoning Decision was adopted cannot render the entities dissimilar. Moreover, the aforementioned discovery to which DT is entitled bears directly on issues related to this claim.

- **Exclusionary Zoning Claim (Count V).** Michigan's exclusionary zoning statute, M.C.L. § 125.3207, provides:

  > A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a local unit of government in the presence of a demonstrated need for that land use within either that local unit of government or the surrounding area within the state, unless a location within the local unit of government does not exist where the use may be appropriately located or the use is unlawful.

  "[T]o sustain a claim that a city engaged in unlawful exclusionary zoning under [this statute], one must show that: (1) the challenged ordinance section has the effect of totally prohibiting the establishment of the land use sought within the city or village, (2) there is a demonstrated need for the land use within either the city or village or the surrounding area, (3) a location exists within the city or village where the use would be appropriate, and (4) the use would be lawful, otherwise." *Adams Outdoor Advert., Inc. v. City of Holland*, 463 Mich. 675, 684, 625 N.W.2d 377, 382 (2001).

  The Township does not dispute that, at least facially, its adoption of the Logistics Use Zoning Decision prohibits the type of distribution and logistics center that DT wishes to build, but argues that DT's claim fails as a matter of law because "even where an amendment has the effect of prohibiting the establishment of a certain use into the future, the amendment does not constitute a 'total prohibition' of the use where the use is already established in the municipality and the [sic] [zoning ordinance] allows nonconforming uses to continue." Because Home Depot and Amazon were approved for similar distribution centers in the area in conjunction with the Township's adoption of the Logistics Use Zoning Decision, the Township

7

contends there is no "total prohibition" on such land use. The Township relies on *Adams Outdoor*, arguing that there is no violation of the statute "where the use is already established in the municipality and the ZO allows nonconforming uses to continue." In *Adams Outdoor*, however, the court was examining a statute that banned new billboards but that "specifically permit[ted] a billboard owner to maintain and repair existing signs . . ." *Adams Outdoor*, 463 Mich. at 684. Here, in contrast, the challenged Logistics Use Zoning Decision, on its face, disallows the particular use in question in this case. Moreover, even under the Township's theory, discovery is warranted as to the approval of the Home Depot and Amazon projects which, despite happening essentially concurrently with the adoption of the Logistics Use Zoning Decision, the Township touts as proof of the challenged ordinance's non-exclusionary nature. Similarly, discovery is warranted as to factual issues such as the alleged "demonstrated need' for the land use in question. While the Township faults DT for making a "route conclusory reference to the notion that there was a demonstrated need for the warehousing/distribution uses in the Township or surrounding area," it ignores that the crux of DT's complaint is that the Township adopted the Logistics Use Zoning Decision prohibiting warehousing/distribution uses at the same time it approved the Home Depot and Amazon projects for such uses. Again, discovery is warranted into those matters.

For all of the foregoing reasons, the Township's motion for judgment on the pleadings as to DT's exclusionary zoning claim should be denied.

- **Second Amended Complaint.** As noted above, DT's counsel provided significant additional details at the hearing on the Township's motion for judgment on the pleadings regarding the work DT performed on the Property and the work the Township performed on the property in connection with the planned distribution and logistics center. DT's counsel also provided significant additional details regarding the allegation in its complaint that the Township "agreed [that the work performed] constituted commencement of construction." Given the potential significance of these allegations, DT's counsel agreed it would be appropriate for DT to file an amended complaint. Accordingly, DT should be ordered to file a second amended complaint within 30 days.

Dated: November 6, 2023  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 6, 2023.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager