UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.T. REAL ESTATE INVESTMENTS, L.L.C.,

    Plaintiff-Petitioner,

v.

CHARTER TOWNSHIP OF HURON,

    Defendant-Respondent.

_____/

Case No. 23-10780

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [59] AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

This matter is before the Court on D.T. Real Estate Investments, LLC's ("Plaintiff" or "DT") motion for partial summary judgment on their substantive due process claim. (ECF No. 59.) In 2015, DT purchased property in Defendant Charter Township of Huron ("Defendant" or "Township"). The parcel is located within a designated economic development hub that was zoned for special land use allowing warehousing and material distribution centers, and trucking and transit terminals. Though the parties coordinated to develop and approve plans for a transit and distribution center, Plaintiff ultimately decided to try to sell the property before construction was complete. Defendant rezoned the area in 2020 removing the special land use. Plaintiff claims to have a vested property interest in the previous zoning that gives rise to its claim.

The Court previously considered this issue when addressing the Township's motion for judgment on the pleadings. (ECF No. 23.) After reviewing Magistrate Judge Grand's report and recommendation, the Court accepted his conclusion that discovery

1

was necessary to establish the nature of the agreements made by the parties and the work completed in reliance on those plans. (ECF No. 41, PageID.487.) In their filings in the current matter, the parties agree that there is now no genuine issue of material fact. (ECF Nos. 59, PageID.1144; 64, PageID.1381.) In its response, Defendant requests partial summary judgement in its favor under Fed. R. Civ. P. 56(f). (ECF No. 64, PageID.1372.) For the following reasons, the Court DENIES Plaintiff's Motion for partial summary judgment as to Count I of the Second Amended Complaint and GRANTS partial summary judgement on this matter in favor of Defendant.

## I. Background

In 2013, Plaintiff entered into a Purchase and Development Agreement ("Agreement") with Wayne County for the property in this dispute. (ECF No. 59, PageID.1156.) The property is located in the Defendant Township in an area targeted for economic development known as the Aerotropolis, a two-county public-private partnership with the Wayne County Airport Authority established to attract businesses able to capitalize on the area's intermodal transportation infrastructure. (*Id.* at PageIDs.1151; 1155 n.1.) Plaintiff planned to build a new headquarters for their tenant, Load One, a trucking company that had outgrown another of Plaintiff's properties. (ECF No. 64-3, PageID.1451.) The Agreement provided for a due-diligence period allowing DT to inspect the property and determine whether it met the requirements for this development prior to closing. (ECF No. 59, PageID.1157.)

The Agreement also provides for many additional preliminary matters. As the seller, Wayne County's covenants included completing the paving of Wahrman Road, relocating Blakely Drain, delivering public water and sewer to the property, and

mitigating wetlands. (ECF No. 59-2, PageID.1182–3.) The county had developed plans for these activities prior to the Agreement with Plaintiff because they were general improvements necessary for development at the site. (ECF No. 64-3, PageID.1437.) Plaintiff's purchaser covenants provided that DT would "diligently pursue all required governmental approvals," construct and occupy the building as planned, and "invest no less than $6 million in building and real property improvements at the property." (ECF No. 59-2, PageID.1184–5.) The property was zoned as a Pinnacle Development Area District ("PDA") permitting a wide array of nonresidential uses, but to allow this development, the Township rezoned the property to add a special land use for warehousing and material distribution centers. (ECF No. 59, PageID.1157.) The rezoning was accomplished in 2013, about three months after signing the Agreement and almost two years prior to closing. *Id.*

Plaintiffs closed on the property on July 12, 2015, paying the purchase price of $851,170. (ECF No. 59, PageID.1159.) Wayne County negotiated the Agreement at over $100,000 less than the appraised value because of DT's committed investment, which, in addition to the $6 million in development and construction, promised 150 white collar jobs plus the tax benefit the development would bring to the county and township. (ECF No. 59-6, PageID.1320.)

On October 6, 2014, the Township approved DT's site plan for the property. (ECF No. 59, PageID.1158.) Despite delays, Wayne County completed the work required under the Agreement's covenants prior to closing. (ECF No. 59, PageID.1159–60.) In addition to these preliminary activities by the county, DT spent an unspecified amount on erosion control measures, tree clearing and grading, and for engineering and

3

architectural plans. (ECF Nos. 59-5, PageID.1296; 64-3, PageID.1448.) Plaintiff alleges spending "hundreds of thousands of dollars" on these activities in reliance on defendant's actions and assurances and the special land use zoning. (ECF No. 59, PageID.1160.)

On October 29, 2015, Wayne County issued Permit No. C-48571 to "Construct, Operate, Use and/or Maintain," allowing DT to perform mass grading and "to construct a temporary construction access in order to fill the wetlands and perform mass grading of the site." (ECF No. 59-8, PageID.1324.) DT also obtained additional permits for tree removal and to perform soil erosion measures. (ECF No. 64-3, PageID.1447.) Plaintiffs never applied for a building permit to construct the planned facility. *See* Deposition of John Enos, Community Development Director for Huron Charter Township, ECF No. 59-3, PageID.1196 ("Nothing was ever formally submitted to the Township for construction."); *see also* Deposition of Thomas Rozycki Deposition, Corporate Representative of D.T. Real Estate Investments, LLC and facilities manager for Load One, ECF No. 64-3, PageID.1450 (Q: "Did you ever obtain a building permit? A: A construction permit for the building itself? No.")

Sometime in 2016, DT halted further work on the property. (ECF No. 64-3, PageID.1452.) On June 22, 2016, in response to an email from the Township inquiring about progress, DT's lawyer relayed that the company would not proceed with construction. (ECF No. 64-4.) This was the last communication between the parties related to the planned development on this property. (ECF No. 64-3, PageID.1453, 1458.)

In December 2018, DT retained a commercial broker to market the property. (ECF No. 59, PageID.1160.) In September 2020, four years after DT halted their progress on the development and in response to other warehousing development project approvals within the Aerotropolis, Defendant rezoned Plaintiff's property, removing the special land use for warehousing and trucking centers. (ECF No. 59, PageID.1153.) Without this special use, the property is zoned for PDA with permitted uses including but not limited to commercial recreational facilities, financial institutions, data processing and computer centers, essential services and structures of public utility companies, flex industrial space, government offices and public buildings, motels and hotels, research and development laboratories and offices, restaurants, personal services, public or private parks, office type buildings, and movie theaters. *See* Charter Twp. of Huron Code § 530-38(B)(1–19) (2024); ECF No. 64, PageID.1381. Plaintiff now moves for summary judgment on their claim that this rezoning violated their constitutional right to the specific warehousing land use.

## II.     Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (*quoting Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is

5

genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial "burden of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (*quoting Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

### III.     Substantive Due Process

Plaintiff alleges that the Township's rezoning of the property denied Plaintiff of its constitutional right to substantive due process. Michigan and federal courts recognize that zoning regulations may, in some circumstances, constitute violations of substantive due process. *See Schenck v. City of Hudson*, 114 F.3d 590, 593–4 (6th Cir.1997); *Frericks v. Highland Twp.*, 228 Mich.App. 575 (1998) (citing *Kropf v. Sterling Heights*, 391 Mich. 139, 158 (1974)). To prevail on a substantive due process claim, "a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564, 573 (6th Cir.2008).

#### A.     Establishing a Protected Property Right

The power of municipalities to control land use is broad and important but not infinite; it "must be exercised within constitutional limits." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (6th Cir. 1992). The U.S. Constitution protects property rights, but independent sources

6

of law, like state law, create and define them. *Mator v. City of Ecorse*, 301 F. App'x 476, 479 (6th Cir. 2008); *Braun*, 519 F.3d at 573. Whether a landowner possess a constitutionally protected property interest, therefore, "is traditionally a question of state law." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). Michigan law protects the right of property owners to continue using their property in a manner that was previously lawful but would be forbidden by subsequent changes to local zoning. This doctrine of lawful nonconforming use protects property owners from fluctuating zoning codes, balancing their rights against the needs of local governments. *Gerrish Twp. v. Esber*, 201 Mich. App. 532, 533 (1993). Michigan's Zoning Enabling Act, Mich. Comp. Laws § 125.3208 (2006), establishes this right to a lawful nonconforming use, and Michigan common law defines its standards.

These standards include protected nonconforming uses on property that has not been fully developed. Whether a landowner has proceeded far enough with the proposed development to have acquired a vested right to continue the nonconforming use is a "necessarily subjective" question of fact that varies case by case. *Heath Twp. v. Sall*, 442 Mich. 434, 446–47 (1993) "To establish a nonconforming use, there must be work of a 'substantial character' done by way of preparation for an actual use of the premises" and in furtherance of the nonconforming use. *Gackler Land Co. v. Yankee Springs Twp.*, 427 Mich. 562, 574-75 (1986). "Under Michigan law, a landowner does not possess a vested property interest in a particular zoning classification unless the landowner holds a valid building permit and has completed substantial construction." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992) (citing *City of*

*Lansing v. Dawley,* 247 Mich. 394, 396–97 (1929)). *See also Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008) ("Under Michigan law, it is well established that possession of a valid building permit coupled with substantial reliance thereon, including actual construction, will bestow vested property rights to a non-conforming structure."). There is no "comprehensive formula" to determine what amounts to substantial construction; "[a]n independent examination of each activity [offered as evidence of such work] is necessary." *Mator*, 301 F. App'x at 479 (citations omitted); *Sall*, 442 Mich. 434, 442, 502 N.W.2d 627, 631 (1993). When conducting these examinations, Michigan courts have repeatedly concluded that construction consistent with both conforming and nonconforming uses does not create vested rights in the nonconforming use. *Sall*, 502 N.W.2d at 630. For this reason, work of a preliminary nature, like site clearing and other preparatory work, is also insufficient to establish a vested right. *Id.* at 440. While these examinations are subjective, Michigan courts have also consistently held that to be substantial in character, work done in furtherance of the nonconforming use "must materially and objectively change the land itself." *Belvidere Twp. v. Heinze*, 241 Mich. App. 324, 328 (2000) (citing *Sall*, 502 N.W.2d at 441). Finally, the work completed must be substantial when compared to the total investment necessary to complete the contemplated development. *See, e.g.*, *Belvidere Twp.*, 241 Mich. App. at 329 (finding that while construction of a manure pit and a sewer system tangibly changed the land and could have been in furtherance of the nonconforming use, the work was "miniscule in comparison with the entire construction" of the planned development); *Sall*, 442 Mich. at 445 (finding that while construction of a water well and wellhouse tangibly changed the land, "[n]either of these activities, in light of the total construction a mobile home

8

park requires, is sufficiently substantial to satisfy defendants' burden [of demonstrating work of a substantial character completed in furtherance of the nonconforming use].").

**B.     Analysis**

Plaintiff argues that, although it never applied for or obtained a building permit, its property right in the prior zoning vested through substantial action taken instead in reliance on Defendant's and Wayne County's actions and assurances. (ECF Nos. 58, PageID.1136; 59, PageID.1143.) Specifically, Plaintiff argues that it justifiably relied on Wayne County's completion of necessary preparatory work for the development, the Township's zoning change to allow the special use, and the Township's approval of a site plan and other permits necessary for the development site. (ECF No. 59, PageID.1152.) Although the parties agree that no building or structure was ever constructed on the property, Plaintiff argues it invested "hundreds of thousands of dollars" undertaking "substantial construction-related activity" in reliance on these assurances. (ECF No. 59, PageID.1160.) These activities included mass grading, clearing trees and obstacles, relocating a drain, wetland mitigation and erosion control measures, area road improvements, and preparing engineering and architectural plans, all which Plaintiff argues were in furtherance of the warehousing and transit center contemplated by the parties. (ECF No. 59, PageID.1152.) Plaintiff also argues that purchasing the property in question for $851,000 was itself a substantial action. *Id.*

1.     **Reliance**

While a building permit itself will not alone confer a vested right to a nonconforming use, reliance on a building permit is an important factor to establish that right. *Schubiner v. W. Bloomfield Twp.*, 133 Mich. App. 490, 501 (1984). Unlike a site

9

plan or zoning compliance permit, a building permit reviews final architectural plans and ensures compliance with all local and state rules for the construction of the structure, all electrical, mechanical, and plumbing codes, and with considerations for public health and safety. *See generally* Michigan's State Construction Code, Mich. Comp. Laws § 125.1510 (1972). A site plan considers only the "dimensions of the land on which the building is to be located, the dimensions of the building, and the building's siting on the land, including distances from property lines and other buildings on the parcel." Charter Twp. of Huron Code § 545-2, 3 (2024). A site plan is distinct from a building permit because it is a preliminary step to ensure zoning compliance and is required before applying for a permit to build. Huron Twp. Code § 530-42(A). "[A] building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining vested rights. An approved site plan is not a permit to build." *Schubiner*, 351 N.W.2d at 219. Michigan courts have consistently adhered to the necessity of a building permit and the completion of substantial construction before property rights can vest, regularly focusing on "[t]he distinction between expenditures for plans *to build* and *building* itself." *Schubiner*, 133 Mich. App. at 498.

  Plaintiff did not have a building permit for the development but argues it relied on other necessary permits and assurances from the Township sufficient to confer a vested property right. First, Plaintiff argues it relied on approval of the site plan, which it claims is still valid. The Township's zoning ordinance requires that a property owner obtain a building permit and commence construction within one year of site plan approval, otherwise the site plan becomes null and void. (ECF No. 23-4, PageID.277.) The Township assured DT via email that they considered construction to have commenced

for purposes of the zoning ordinance with the site preparation work DT began during the due diligence phase. (ECF No. 59-7.) Plaintiff argues that the permit Wayne County issued on October 29, 2015, allowing DT to build a construction access "to fill the wetlands and perform mass grading of the site" was sufficient to satisfy the ordinance's building permit requirement. (ECF No. 59, PageID.1159; See also ECF No. 59-8.) Whether this permit satisfies the zoning ordinance or not is irrelevant here, because even if it remains valid, a site plan alone does not establish vested rights in a nonconforming use. *Schubiner*, 351 N.W.2d at 219. ("The features of reliance and estoppel which may give rise to vested rights under a building permit do not necessarily arise under an approved site plan[.]") Nor does the approval Plaintiff argues is a building permit under the zoning ordinance confer a vested right. That permit authorized preparatory site work, not construction of a building for any specific use. *See* ECF No. 59. *See also* Deposition of Thomas Rozycki, Plaintiff's corporate representative, ECF No. 64-3, PageID.1450 ("The permit was for the mass grading and the site development. … It was kind of a Phase I -- my understanding was that for the development of the property, we were still working out some details on the actual building itself. … we just didn't have final construction documents complete.") Work that is preliminary in nature is insufficient to establish a vested right. *Sall*, 442 Mich. at 440.

In addition to the site plan and the permit for preparatory grading, DT argues that it relied on permits for tree removal and to perform soil erosion measures, and on the preparatory work done by Wayne County. (ECF No. 64-3, PageID.1447.) Like the permit for grading, tree clearing and soil permits are distinct from building permits because they do not approve a particular use for the land. *See, e.g.*, *Belvidere Twp.*, 241 Mich.

11

App. at 329. ("[T]he reasoning that supports a finding that a landowner's building permit may give rise to a vested interest would not apply to water and soil permits."). As for the work done by Wayne County, Plaintiff suggests these actions were undertaken to induce it to purchase the property for the warehousing use, and Plaintiff justifiably relied on that encouragement and support. (ECF No. 59, PageID.1151.) Plaintiff does not argue that the inducement was fraudulent; rather, it seems to suggest that Defendant should be estopped from rezoning the property because Plaintiff relied on Defendant's representations. There is no question that Defendant hoped to induce Plaintiff to build the planned development. The Township stood to realize significant benefits if Plaintiff undertook the project. However, the fact that Wayne County fulfilled their obligations under the Agreement and that the Township approved preliminary permits for a contemplated use are insufficient to establish Plaintiff's rights. Plaintiff never obtained a building permit for construction related to any specific use. Defendant encouraged the project as part of its overall economic development plan and worked with Plaintiff to take the necessary initial steps to complete a desired project that Plaintiff ultimately chose not to pursue. Inducement could be relevant because establishing a vested right in a partially developed property requires a close examination of the facts, however the Court finds that these actions do not satisfy Plaintiff's burden, nor do they raise questions of equity or justice.

Finally, even with a valid site plan and other preliminary approvals, Plaintiff must still apply for a building permit before beginning any construction for the nonconforming use. The Sixth Circuit follows these guiding principles in nonconforming use cases:

> [A] property owner may have a property interest in the existing zoning classification of his or her property or in a discretionary benefit *after it has*

12

> *been conferred*. … A party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary.

*Ogle v. Sevier Cnty. Reg'l Plan. Comm'n*, 838 F. App'x 913, 919 (6th Cir. 2020). (emphasis added) (internal quotation omitted). In this case, Plaintiff does not possess a necessary building permit to commence construction of its development for the nonconforming use. To proceed with its development, Plaintiff must apply to the Township for a building permit, and the Township retains discretion to approve or deny that benefit. For these reasons, the Court finds that the site plan, permit approvals, and other assurances Plaintiff relied on are insufficient to establish a vested property right.

### 2. Substantial Construction

Even if Plaintiff could have reasonably relied on preliminary permits and assurances, or if it had obtained a building permit, it must also still show it performed substantial construction in furtherance of the nonconforming use to establish its vested right. *Gackler*, 427 Mich. At 574-75. *See also*, *Soss v. Whiteford Twp.*, Nos. 278914 and 278915, 2007 WL 2892974, at *1-*2 (Mich. Ct. App. Oct. 4, 2007) (finding that even with a building permit, entering into a purchase agreement for the property, obtaining financing, closing on the sale, contracting for engineering and architectural services, obtaining site-plan approval, acquiring various required permits, ordering and a prefabricated 5,000 square foot building for the project offsite, preliminary grading, fencing, curbing and excavation work, obtaining surveys and well-drilling services, and investing "approximately $1.4 million into the project" were preliminary activities insufficient to establish substantial construction for vested rights.). Plaintiff claims it invested "hundreds of thousands of dollars" on contruction. (ECF No. 59, PageID.1152,

13

1160.) As an initial matter, Plaintiff never clearly separates its own construction activities and expenses from the work Wayne County completed to prepare the development site. Plaintiff never itemizes the work, provides a receipt for it, or breaks down the dollars invested by activity, but it is clear from the record that at least some of the work Plaintiff provides as support of its substantial construction was completed entirely by Wayne County. *See, e.g.*, ECF No. 64-3, PageID.1445, Deposition of Thomas Rozycki, Plaintiff's corporate representative:

> Q: So the wetland mitigation, that was being performed by Wayne County?
> A: Correct.
> Q: Did D.T., Load One in any way get involved with the wetland mitigation?
> A: No, not that I recall at all.
> Q: What about the Blakely Drain, was that entirely Wayne County?
> A: Entirely Wayne County.
> Q: No Load One or D.T.?
> A: No Load One or D.T.
> Q: What about the road?
> A: The road, no. We were just waiting for it to be complete.

Additionally, the claim of "hundreds of thousands of dollars" spent on construction appears to be based on Plaintiff's assumption that Wayne County used money from Plaintiff's purchase price to fund these improvements, and therefore Plaintiff should be credited for the investment. *See* ECF No. 59, PageID.1160 ("wetland mitigation was done by DT and Wayne County, the site was mass graded by DT and cleared of trees and other obstacles, the Blakely Drain was relocated by Wayne County, and Wahrman Road was improved by Wayne County, all as required by the Agreement and *in use of the Purchase Price*.") (emphasis added). Plaintiff, however, provides no basis to conclude that work completed entirely by a third party at the third party's expense is attributable to a property owner to establish a substantial investment made to the property owner's detriment. Regardless of who paid for or performed the activities or

how much they cost, however, the Court concludes that the work completed is insufficient to establish a protected property right. *Gackler*, 427 Mich. at 398 ("The test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, "whether there has been any tangible change in the land itself by excavation and construction.") (quotations omitted).

Examining each activity in turn, the Court finds that mass grading, clearing trees and obstacles, wetland mitigation, and erosion control measures are preparatory in nature, not particular to any land use, and therefore not sufficient to create a vested right to erect a building for a specific use. *See Sall*, 442 Mich. at 442 ("Clearing trees and removing topsoil … do not constitute work of a 'substantial character.'"). The completed road improvements are similarly suitable for land uses on the property beyond warehousing and distribution and therefore are not substantial construction that makes that particular use apparent. *Gackler*, 427 Mich. At 576. Plaintiff's engineering and architectural plans are also preliminary activities, and "[p]reliminary operations such as ordering plans [and] surveying the land are insufficient to establish a nonconforming use." *Id.* at 574–75. While relocating the Blakely drain may have made an objective and permanent change to the land, the Court finds that, as with the other activities Plaintiff presents, there is no evidence that the drain would not be of value for any development on the land for any of the many permissible uses under PDA zoning.

Plaintiff also suggests that the Township's assurance that DT had "commenced construction" under the local zoning ordinance is evidence of substantial construction to establish their right to the former zoning. (ECF No. 59, PageID.1171.) Plaintiff fails to cite any instance of a court coming to a similar conclusion, however, and the Court will

15

not do so here. These standards are not the same, and casual advice or assurances from officials are insufficient to establish reliance or to prevent a municipality from enforcing a zoning ordinance. *Hughes v. Almena Twp.*, 284 Mich. App. 50, 78 (2009) ("Zoning authorities will not be estopped from enforcing their ordinances absent exceptional circumstances. Casual private advice or assurance of success from township officials does not constitute exceptional circumstances.") (citations omitted).

Finally, the progress of construction achieved towards the total planned development falls short of the substantial construction threshold. While work has been completed on the property, there are no buildings on the site. The planned development included construction of "an approximately 72,000-square-foot building, consisting of approximately 26,500 square feet of corporate offices, 25,400 square feet of warehouse, and 20,000 square feet of maintenance facilities, in which more than 150 people would be employed in the corporate offices, in addition to drivers, warehouse workers, and mechanics." (ECF No. 59, PageID.1158.) An investment of hundreds of thousands of dollars also pales in comparison to the $6 million dollars of planned investment in building and real property improvements Plaintiff promised in the Agreement's purchaser covenants. (ECF No. 59-2, PageID.1185.).

For these reasons, the Court concludes that Plaintiff's claimed construction related activities do not constitute work of a substantial character that makes apparent the property's use as a warehousing and transit terminal, therefore, the work does not establish a vested property right to that use.

### 3. Other Arguments

Plaintiff argues that purchasing the land was itself a substantial act of reliance. Michigan case law does not recognize the purchase of a property as giving rise to a vested interest in a nonconforming use. *Sall,* 442 Mich. at 436 n.1; *Belvidere Twp.*, 241 Mich. App. at 329. However, Plaintiff points to the Sixth Circuit's decision in *Nasierowski Bros. Inv. Co. v. City of Sterling Heights* for this argument. 949 F.2d 890, 897 (6th Cir. 1991). In that case, the Sixth Circuit held that "[t]he acquisition of the land was, in and of itself, a *substantial* act undertaken exclusively upon the City's approval and affirmative encouragement of the proposal." *Id.* at 897. Plaintiff relies heavily on *Nasierowski* for many of its arguments, because in that case, the Sixth Circuit also concluded that the developer had a vested property right without a building permit, relying instead on various assurances made by the local government. *Id.* at 897.[1] The facts in *Nasierowski* are unique and distinguishable, however, and do not support adopting similar conclusions in the present matter.

In *Nasierowski*, the developer wanted to build a warehouse on a property and made the property's purchase expressly contingent on zoning that would allow this use. *Id.* at 891. City representatives confirmed that existing zoning allowed the use, so the developer closed on the property and developed and received approval for a site plan. *Id.* Similarities to the present matter end there. In *Nasierowski*, five months after initial approval of the developer's site plan, and while the developer was actively applying for necessary permits and engaged in site preparation, a member of the city council who lived near the planned development expressed his personal opposition to commercial

---

[1] Plaintiff also cites *Tandy Corp. v. City of Livonia*, a case that relies on the reasoning in *Nasierowski*. *Tandy* is also distinguishable, however, notably because the developer had obtained a building permit. 81 F. Supp. 2d 800, 808 (E.D. Mich. 1999).

use on the property at a public meeting. *Id.* at 892. This council member also refused to recuse himself from further discussions on the matter. *Id.* At the same time, the city's local planning commission drafted a new master zoning plan. *Id.* The revised plan would still allow the planned warehouse development on the developer's property, therefore he did not object to the proposal or attend public hearings on its adoption. *Id.* After all public hearings on the new master zoning plan were complete, the council met in a closed session to vote on adoption. *Id.* There, the council member with a personal objection to the development introduced, and the council voted to pass, an amendment targeting the development property, rezoning it to prohibit the planned commercial warehousing use. *Id.* The council then adopted the new plan with this amendment without further comment from the public or notice to the developer. *Id.* For several days after the council adopted the new master zoning plan, the developer continued to pursue permits and approvals, only learning that his property had been rezoned when the previously issued site plan approval was rescinded and his pending application for a building permit was denied. *Id.* at 893.

In *Nasierowski*, the developer challenged the local government's action of rezoning his property without first giving him either notice of the change or a hearing, and the case was decided on procedural due process grounds. Claims of due process rights to nonconforming uses under procedural due process, as in *Nasierowski*, and substantive due process, as in the present matter, both require a vested property interest, which in Michigan requires a building permit and substantial construction in furtherance of the claimed nonconforming use. In *Nasierowski*, the Sixth Circuit found an alternative basis for the developer's reliance that established these rights. There is

18

no evidence in the present matter, however, that any individual rezoned DT's property for personal motives. *Dorman v. Twp. of Clinton*, 269 Mich. App. 638, 653 (2006). The facts also demonstrate that unlike *Nasierowski*, the present case is "not a situation where construction of a project before completion is halted by the enactment of a zoning ordinance and to disallow completion of the project would work a clear injustice." *Gackler*, 427 Mich. at 575. For these reasons, and because these questions are fact specific and require a case-by-case analysis, the Court declines to extend the reasoning in *Nasierowski* to the facts here.

For the reasons above, the Court finds that Plaintiff has not established a protected property right. Accordingly, Plaintiff's substantive due process claim fails on this basis, and the Court need not address whether Defendant's decision was arbitrary and capricious.

### III. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion for partial summary judgment as to Count I of the Second Amended Complaint. The Court has discretion to grant the nonmoving party summary judgment per Fed. R. Civ. P. 56(f) and GRANTS partial summary judgement on this matter in favor of Defendant.

SO ORDERED.

                                                 s/ Nancy G. Edmunds
                                                 Nancy G. Edmunds
                                                 United States District Judge

Dated: February 25, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 25, 2025, by electronic and/or ordinary mail.

                    s/ Marlena Williams
                    Case Manager